## CARHART *v.* ALDRIDGE, *et al.**

(Division B.   Sept. 27, 1926.)

[109 So. 700.   No. 25704.]

1. REFORMATION OF INSTRUMENTS. *Bill to set aside judgment and settlement between parties thereto on ground of mistake must show mutual mistake, and due diligence in ascertaining facts at or prior to time of settlement, and that ignorance of facts was not result of, or want of, reasonable care and diligence.*

   An original bill, filed to set aside a judgment of a chancery court and a settlement between the parties thereto on the ground of mistake, must not only show that there was a mutual mistake, which induced the decree and settlement, but there must also be shown thereby due diligence in ascertaining the facts at or prior to the time of the settlement, and that ignorance of the facts was not the result of, or want of, reasonable care and diligence upon the part of such party.

2. COMPROMISE AND SETTLEMENT.

   Family settlements are highly favored by the courts, and they will not be lightly set aside at the instance of a party, or parties, thereto.

---

*Corpus Juris-Cyc. References: Compromise and Settlement, 12CJ, p. 322, n. 10; p. 323, n. 12; Reformation of Instruments, 34Cyc, p. 974, n. 49; p. 975, n. 61; p. 976, n. 64.

APPEAL from chancery court of Washington county.
HON. E. N. THOMAS, Chancellor.

Suit by Mrs. Kate Feltus Carhart against Katherine Feltus Aldridge and others to set aside an instrument of conveyance, an instrument creating a trust in her behalf, and a decree in a former suit. From a judgment for defendants, plaintiff appeals. Affirmed and remanded.

*Boddie & Farish* and *Lamar F. Easterling,* for appellant.

The only ground of demurrer that aims at the whole bill is whether or not the bill as a whole has equity on its

face and shows that appellant here, complainant below, was entitled to equitable relief. The averments of the bill and the exhibits in connection therewith bring into review and make it sufficiently plain that the compromise agreement and the decrees and instruments entered in furtherance thereof were caused by duress, imposition, misrepresentation and by mutual mistake of fact. If the allegations of this bill are true, which is admitted on this demurrer, for the purpose of the demurrer, the grossest outrage has been perpetrated under the guise of a compromise against the appellant.

We content ourselves with some of the leading decisions touching the jurisdiction of a court of equity to set aside any agreement, deed, decree, contract or settlement where there was a mutual mistake in a material fact, but for which such contract, agreement, *or decree would not have been made* or entered into.  27 Cyc. 807 and note; 8 Cyc. 523; *Nabors* v. *Cocke,* 24 Miss. 44. The last-named case is peculiarly applicable here and, in our judgment, is conclusive on this demurrer. See also *Harrison* v. *Stowers,* 1 Walker, 165 (Miss.) ; *A. & V. Ry. Co.* v. *Jones,* 73 Miss. 110, 19 So. 105; Pomeroy on Equity, secs. 841-850; *Powell* v. *Plant,* 23 So. 399, which is nearly on all fours with this case; *Brown* v. *Wesson,* 114 Miss. 216, 74 So. 831.

All the authorities may be summed up in the simple statement that if Mrs. Carhart was induced to make the settlement and agree to the decree as she did under this mutual mistake of a most material fact in the case, then on this ground alone equity has power to take jurisdiction of the bill and to grant full and complete relief. There is no trouble in this case about restoring the *status quo.* In fact, nobody can be hurt at all if all the transactions of sale are set aside. We submit that the bill is sufficient on demurrer and that it imperatively calls for an answer. *Merchants & Farmers Bank* v. *Dent,* 102 Miss. 455, 59 So. 805; *Norwich Fire Ins. Co.* v. *Standard Drug Co.,* 117 Miss. 429, 78 So. 353.

Regarding a mistake as to material matter, see: *Allen et al.* v. *Luckett,* 94 Miss. 872; 2 Pomeroy's Equity Jurisprudence, secs. 852, 853, *Bigham* v. *Madison,* 103 Tenn. 358, 52 S. W. 1074, 47 L. R. A. 267; *Webb* v. *Webb,* 54 So. 840; *Hoy* v. *Hoy,* 93 Miss. 732, 48 So. 903, 25 L. R. A. (N. S.) 182 note. See also *Clark* v. *Lopez,* 75 Miss. 932, 23 So. 648; *Norfleet* v. *Beall,* 82 Miss. 538, 34 So. 328; *Johnson* v. *Hall,* 87 Miss. 667, 47 So. 1; *Leech* v. *Hirshman,* 90 Miss. 723, 44 So. 33; *Leflore County* v. *Alley,* 80 Miss. 298, 31 So. 815.

Ordinarily a compromise settlement where fairly and understandingly entered into is valid, but can be set aside on the clearest evidence of fraud or mistake. In fact, fraud or mistake are very common grounds of equity in the cancellation of instruments. For a case where the contract of sale was set aside, see *Caulk* v. *Burke,* 73 So. 618, 75 So. 369, 114 Miss. —. The above case was first affirmed and afterwards on a suggestion of error reversed. See also *Lowenstein* v. *Goodbar,* 69 Miss. 808, where it was held that the mutual mistake upon which a sale will be avoided must be as to an essential fact which forms an inducement of sale such as would justify the inference that if the truth had been known, the sale would not have occurred. See *Railroad* v. *Jones,* 73 Miss. 110; *Pratt* v. *Cotton Co.,* 51 Miss. 470; *Spark* v. *Pittman,* 51 Miss. 511; *Norton* v. *Coaley,* 45 Miss. 125; *Cumming* v. *Steele,* 54 Miss. 647; *Bunch* v. *Shannon,* 46 Miss. 523; *Allen* v. *Bratton,* 47 Miss. 119; *Clark* v. *Equitable Society,* 76 Miss. 22; *Hoy* v. *Hoy,* 49 So. 903; *Virginia Trust Co.* v. *Cato,* 134 Miss. —, 99 So. 261; *Alexander* v. *Meek,* 96 So. 101; *Jones* v. *Metzger,* 96 So. 161; *Burton* v. *Hayden,* 108 Va. 51, 60 S. E. 736, 15 L. R. A. (N. S.) 1038.

The very purpose of a demurrer is to give appellant a better bill and to call attention to any defects of form that could be cured by amendment. Its office is to point out the way to a better bill. See *Fearne* v. *Shirley,* 31

Miss. 301, 66 Am. Dec. 575; *Watson* v. *Byrd,* 53 Miss. 480; *McNair* v. *Stanley,* 57 Miss. 298.

Taking the four corners of the bill and all the allegations and averments together, we submit that a clear case of mistake as to a material fact, coercion by circumstances and misrepresentations, is presented by this record which clearly entitles appellant to the relief prayed for.

A settlement should not be allowed to stand on the averments of this bill, especially between mother and daughters under the facts and circumstances as averred in the bill. The case should be reversed, the demurrer overruled, and the cause remanded for a trial upon the facts as averred in the bill; and if appellant substantiates these facts, the instruments assailed should be canceled and appellant granted the relief therein prayed for.

Boiled down to the last analysis, appellant was induced to surrender and sign away her entire interest in said estate, to forego any claim for services rendered in the managing of said estate, and to forego any claim due her in the administration of said estate, all for a mere pension of two hundred dollars per month during her life.

On the authority of *Webb* v. *Webb,* 84 So. 640, a transaction between parent and child is to be even more carefully scrutinized than if it had taken place between strangers. Therefore, on the facts of this record, we submit that the chancellor erred in sustaining this demurrer and that the cause should be reversed and remanded and that the appellant should be required to answer said bill and that the cause should be tried upon its merits.

*Watson & Jayne,* for appellees.

The theory of appellant is that this is a case of mistake. The position of appellees on the subject of mistake is: (1) That the bill and exhibits show that there was

no mistake; (2) if there was a mistake, it was a mistake of law, from the nature of which equity will not relieve; and (3) that the consideration for the deed and trust instrument were not based on any mistake of law or fact, but that the same were set up, executed, and delivered for valuable consideration, as therein expressed, moving toward the appellant, and saving her from want because of the wastages for which she was accountable to appellees.

For masterly statement of the origin, growth, and present *status* of mistake in equity, see 2 Pomeroy, Equity Jurisprudence (4 Ed.), secs. 838-871, inclusive. The instant case falls under that classification in Pomeroy relating to compromises and voluntary settlements, as explained in section 850.

Holding to the viewpoint of appellees already brought forward in this brief on the subject of mistake and to the particular classification of the cases controlling the transaction complained of in the instant case, as being one of compromise, appellees do not differ with the textbooks and cases extensively cited in appellant's brief on the general subject of mistake. Nor do appellees differ with the line of authorities cited in appellant's brief on the subject of mutual mistake—this for the reason that the allegations of the bill of complaint taken with the exhibits thereto do not make the instant case one of mutual mistake as appellees have already endeavored to show.

*Law on Demurrer.* Appellees do not differ with the authorities cited by appellants on the subject of demurrer, but contend that they are in their application of general import, and not controlling in the instant case; and this for the reason that the allegations of the bill endeavor to make a case of mutual mistake wholly based on an alleged ignorance on the part of all parties of the attempted resignation of James B. Fraley as executor and trustee. But this allegation must be taken with the proceedings in the two equity causes, to-wit: Nos. 3941

and 7379.   In the first of the above cases, which was the administration case, the papers were filed and constituted a part of the record therein, and in the second the removal of trustee case, an issue was made with regard to both the filing and effect of this paper.   Therefore, as appellees see it, there was no mistake even on the part of appellant and certainly no mutual mistake as alleged in the bill of complaint.   2 Pomeroy, Equity Jurisprudence, secs. 844, 846, 847, 848, 850.

As to the subject of compromise and voluntary settlements and the cases supporting Pomeroy, see:  *Gilliam* v. *Alford,* 6 S. W. (Tex.) 757; *Dalphine* v. *Lume,* 122 S. W. 776 (Mo.); *McIsaac* v. *McMurray,* 77 N. H. 466, 93 Atl. 115; *Martin* v. *Martin,* 98 Ark. 93, 135 S. W. 348; *Butson* v. *Misz,* 160 Pac. 530; *Hall* v. *Wheeler,* 35 N. W. (Minn.) 377; *Bell* v. *White,* 73 Atl. (N. J. Eq.) 861; *Stapleton* v. *Stapleton,* 2 Lead. Case in Eq. 631; *Hewitt* v. *Crane,* 2 Hals. Ch. 171, 631; *Wells* v. *Neff,* 12 Pac. (Ore.) 84; *Zimmer* v. *Becker,* 29 N. W. 228; *Gormly* v. *Gormly,* 18 Atl. (Pa.) 727; *Smith* v. *Tanner,* 32 S. C. 259, 10 S. E. 1008.

Nor does the rule requiring full disclosure of facts apply in the instant case—this for the reason that full disclosure of the case of complainants in cause No. 7379, the appellees here, was made in their bill of complaint. The defendant there discloses that she and her solicitors had full information with regard to the attempted resignation.   Therefore, the only differences that existed in that particular cause were on the question of removal for cause and accounting for waste.

It is insisted by appellees that the bill of complaint did not make a case of mistake, did not make a case of duress and did not make a case of undue influence; and, therefore, the case ought to be affirmed.

Argued orally *H. P. Farish* and *Lamar F. Easterling,* for appellant, and *H. C. Watson,* for appellees.

ETHRIDGE, J., delivered the opinion of the court.

The appellant, Mrs. Kate Feltus Carhart, formerly Mrs. Kate B. Feltus, widow of James A. V. Feltus, deceased, filed her bill in the chancery court of Washington county to set aside an instrument of conveyance executed by her in favor of the appellees, and an instrument creating a trust in her behalf, signed by the appellees as trustees, and a decree of the chancery court in a former suit filed by the appellees against her in the chancery court of Washington county, numbered 7379, in which she was removed as executrix and trustee of the estate of James A. V. Feltus, deceased, under an appointment of the chancery court and by the provisions of the will of James A. V. Feltus, deceased.

It appears by the bill and exhibits thereto that Jas. A. V. Feltus executed the will, which is made an exhibit to the bill herein, disposing of his property and making James B. Fraley, of Chicago, Ill., executor and trustee of the said will, and also testamentary guardian of the minor children of the said Feltus. It is provided in the will that, in the event of the death or refusal or inability of the said James B. Fraley to act as trustee and executor, the appellant, Kate Berkley Feltus, was appointed to act for and to succeed him, with like power and discretion, and, in the event of her death or inability or refusal to act, then the oldest living child to act for or succeed the said James B. Fraley or the said Kate Berkley Feltus, and that, if it should fall to a child not yet of age, then William Griffin of Greenville, in the state of Mississippi, was to act for and succeed the persons thereinbefore named until and only until such child should become of age. The will then directed and appointed the acting trustee as guardian of the personal effects and property of all the minor children of James A. V. Feltus, and likewise appointed the said James B. Fraley, or his successor as named executor of his last will

and testament, and directed that he or she be required to furnish no bond as such executor.

In the sixth section of the will it was provided that the trustee, as trustee and executor, or as either or both, should manage, care for, improve, and protect all of the trust property, and defray all necessary expenses and charges out of the income or sale or disposition of the said property, and the said trustee, his successor or successors, was authorized and directed to pay to the testator's wife, Kate Berkley Feltus, a yearly income of not less than one thousand eight hundred dollars nor more than two thousand five hundred dollars in monthly installments, for, and only for, the care of herself and of the testator's children, and for all their expenses, including house and yard help, but not rental for the home or repairs to it, or of the feed of six animals named in the will. In the seventh section of the will it was provided that the allowance for the care and support of the wife and children of the testator, specified in section 6 thereof, "may at the discretion of my trustee be increased in event of serious sickness or disaster or to assist in my children's education while they may be away from home." The will provided that:

". . . My said trustee or executor, or both, is hereby empowered and authorized and directed to collect, receipt for and discharge any and all notes, obligations, rents, incomes or profits, due or to become due to me or to my estate; to sell, transfer, convey and lease any and all of my personal or real estate with full discretion, and discretionary power is hereby vested in my said executor to sell by public auction or private sale any and all of the said trust estate and properties, at such time, and upon such terms, for such price, and in such manner as to time and mode of payment of the purchase money, or as to any other matters relating to successor or successors shall or may deem expedient, except, however, that I direct that the property now owned by me and referred to as the plantation and known as 'Three Oaks' shall be

kept intact, but my trustee, his successor or successors, is authorized, with full power and discretion, if he shall deem it advisable, to sell and convey locations from said plantation for *bona-fide* manufacturing or commercial purposes in such amounts and from such location as he shall determine in his discretion. My said trustee is hereby fully authorized and empowered, with full discretion, to take tracts of ten or more acres from any part of the said plantation property for the purpose of subdividing the same into building or town lots; or to take any necessary ground for railroad tracks or trackage, depot or depot ground, public road or building lot of any kind. It is my wish, however, except as stated above, that the plantation be preserved until my youngest child is of age.''

James B. Fraley qualified as executor and trustee, and testamentary guardian, and spent some time in executing said trust, but, being a man of more than sixty years of age, and living in Chicago, he decided that he could not continue as trustee, as it would require too much of his time upon the plantation in Mississippi, and he filed a petition setting up his refusal to act, and his final account as executor and trustee, in the chancery court of Washington county, praying that all parties in interest be made parties thereto, and that his account be approved and his resignation accepted, and that he be finally discharged from executing the trust and as executor of the said estate. The court entered a decree on this petition and final account, reciting:

''This cause coming on this day to be heard upon the resignation of James B. Fraley, as executor of said estate, and also upon the report and final account of said executor, and it appearing that all the persons interested in said estate have been cited by legal process to show cause, if they can, why the final account of said executor should not be approved and he discharged, and the court being of the opinion that the resignation of said executor should be accepted and his final account approved

and he discharged, it is therefore considered by the court and so ordered and decreed that the resignation of James B. Fraley, as executor of the estate of J. A. V. Feltus, deceased, be accepted, and that his final account be approved and said executor finally discharged.''

The said Fraley thereupon turned over the property and effects in his hands as executor and trustee, and the bill alleged that the complainant was appointed as executor and testamentary trustee of said estate, and the appellant took charge of said property on the 1st day of January, 1911, and entered upon the due and prompt administration of the same under the powers of said will, and continued until the 15th day of October, 1923, when she was forced to resign because of the wrongs and injuries set forth in her bill.

It appears from the bill and exhibits thereto that this resignation came about in the settlement of a suit filed by the appellees against the appellant, charging her with expenditures of large amounts of money and wasting the estate, and charging that she was not, in fact, trustee of the said estate, and that in fact and in law Fraley had never ceased to be trustee, and had never validly resigned as such trustee, and that the appointment of the appellant as trustee was void, and that she was acting without legal authority and became executor and trustee *de son tort*.

It is further charged in the said bill that the provisions of the will above mentioned giving an annuity or income of not less than one thousand eight hundred dollars nor more than two thousand five hundred dollars, in monthly installments, for the care of the wife and the children of the testator by him (which sum was authorized to be increased under the circumstances named in the will), was ignored in the handling of said estate; that the appellant, purporting to act as trustee, had sold off property aggregating a sum more than ninety thousand dollars; that some of the sales were made for less than the market value thereof, some for not more than one-

third, and others for not more than one-half of the value thereof; and that she had also collected large amounts of rent and income from the property of the said estate, and that she was in duty bound to account to the complainants in the said suit annually for all funds received by her on account of her handling of the estate of the deceased, which she had not done.

It is further charged that she has wasted by useless and unnecessary expenditures and outlays, and by speculation in worthless corporate stocks and bonds, and through ill-advised and unprofitable and risky investments, all or practically all of the proceeds of sales of real property made as above mentioned and the proceeds of all incomes and rents received by her; that this has gone on until there is little, if anything, of value now in her hands to show for or represent the proceeds of sales of real property or the incomes received by her as charged; that she has moved and is moving and placing or investing a considerable portion of the funds of said estate in her hands outside of the state of Mississippi and in distant states, where neither the court nor the plaintiffs in said suit can keep up with the same, or learn anything of the solvency of such investments.

It is further charged that all sales of real estate made under the will by the said Mrs. Kate B. Feltus, now Carhart, are void or voidable, and that she has by her actions so conducted the affairs of the said estate as to warrant this court in removing her as testamentary trustee, and to justify the court in appointing another trustee in her stead, requiring her to account for her maladministration of the said estate. It is further charged that she is indebted to the complainants each in the sum of twenty-five thousand dollars or more; that, while they do not intend to charge anything against her integrity and honesty, they do charge waste, speculation, ill-advised investments, and maladministration of said estate on her part.

By an amended bill an injunction was prayed for and obtained against her selling any further property belonging to the said estate. This bill, No. 7379, was answered by the appellant, in which answer she admitted the execution of the will referred to; that Fraley had accepted the appointment of trustee and executor therein. She admitted that prior to October, 1910, said Fraley tendered his resignation as executor of the said estate, and filed a final report as such executor, and by order of the court, dated October 18, 1910, his resignation as such executor was accepted, and his final account approved, and he discharged; that prior to May 3, 1913, Fraley tendered his resignation as testamentary guardian of the minor children of the said decedent which resignation was accepted by the court and said guardian discharged; and that by said order she, Kate B. Feltus, now Carhart, was appointed as testamentary guardian of said minors, instead of the said James B. Fraley, and that no bond was required of her as such guardian. She further answered:

"Defendant neither admits nor denies that the minutes of the court do not show that James B. Fraley resigned as testamentary trustee. Defendant states and charges that the said James B. Fraley did resign as testamentary trustee in the early part of 1910, and he is not now and has never been since that date the testamentary trustee under the provisions of said will."

She further admitted that the decedent James A. V. Feltus' estate consisted of personal and real property, that she sold various pieces of real property belonging to the estate of the deceased, and that all of said sales aggregated in amounts and consideration approximately ninety thousand dollars. She denied that sales were made for less than the market value thereof, and the allegations of the bill in reference thereto, and charged that each and every sale was made for the full market value. She admitted that she collected a large amount

of rents and income from the property of said estate during the period she was executrix and trustee.

She admitted that under section 11 of the will "the trustee, his successor or successors, is hereby directed to make a comprehensive report annually to my direct heirs," and charges that she made, from time to time, reports as to the condition of said estate to her said daughters, but did not make any written report; that the said daughters resided with her up until the dates of their respective marriages, and had from time to time visited her, and that they were at all times fully acquainted with all receipts and disbursements in connection with the estate.

She denied that she had wasted by useless and unnecessary expenditures, or by speculation in worthless corporate stocks and bonds, or through ill-advised and unprofitable and risky investments, all or practically all of the proceeds of sales of real property and incomes and rents received by her. She admitted that the incomes arising from the sales of property and money received from rents had been spent in the care and maintenance of herself and her three daughters, and in the education of her daughters. She stated that in the care of her children she had been extremely lavish in looking after their natural wants and in satisfying their desires, and, in addition, had given them large sums of money for such purposes. She further alleged in her answer that prior to the marriage of her daughters they were extremely lavish in entertaining guests at their home, and had spent much time in traveling around, all of which expenses were borne by her without complaint; that it was her wish to give her daughters as much pleasure as she could provide; that even subsequent to their marriage she had spent large sums of money for clothes and other things for them; that within the past two or three years (at the time of the answer to the said suit) she had paid one dry goods store two thousand four hundred dollars and another one thousand two hundred dol-

lars, being mainly for clothes for her said daughters; that she advanced her daughter Martha five thousand dollars to build a home in Arkansas.

After this bill and answer was filed the cause came on for hearing, the appellant being represented by attorneys, and an order was entered by the chancellor removing the appellant "from the executorship and trusteeship, either or both, as she may be or have been, under the provisions of the last will and testament of James A. V. Feltus, deceased, and that she be and is ordered to make and file her account within ninety days herefrom, the same to be done in writing, to which date the hearing on said accounting is set." This order was made on the 15th day of October, 1923. The original bill in that cause was filed May 26, 1923. The trust agreement made in settlement of this suit was signed and acknowledged on the 29th day of March, 1924. The present bill appears to have been filed on the 13th day of August, 1925.

In her present bill she alleges that she was unable to file an account as required by the decree above mentioned, because of the burning of her house, books, and papers pertaining to said transactions. In her account filed with the present bill she has items in gross amounts for certain years with reference to the support and education of her children: One item: "1912 and 1913. To money expended for railroad fare, clothes, tuition, incidentals for Katherine Feltus attending All Saints College, Vicksburg, three thousand dollars." Another item: "1916. To support and maintenance of Katherine Feltus while at home and money expended for house parties, clothes, trousseau, and incidentals, seven thousand five hundred dollars." And "1925. To cash and automobiles furnished Katherine Feltus after her marriage, seven thousand five hundred dollars."

The bill in the present case was demurred to, and the demurrer sustained, and the case appealed to this court.

It will be seen from the statement of facts that the suit filed against Mrs. Kate Feltus Carhart by her children,

which brought about the settlement sought to be set aside herein, was filed in the early part of 1923, and that she employed attorneys to advise with her and file her answer therein, as noted above. There is no allegation in the bill to show why she did not, or could not, examine the records and court proceedings in Washington county involving the probating of the will, the resignation and final account of Fraley, with the order of the court entered thereon, and have learned from such records exactly the *status* of the proceeding at that time. While equity has jurisdiction to relieve against a mistake mutually made in the settlement of contracts or dealings between parties, even in lawsuits between them, one of the essential requirements is that, in setting aside such proceeding for a mistake mutually made by the parties, the party must not have been guilty of negligence in learning of such mistake.

In Miss. Chancery Prac. (Griffith) at page 745, section 642, it is said: ''A decree may be vacated and thereupon corrected by an original bill, in the nature of a bill of review, for fraud in its procurement, or upon any such state of facts as constitutes the legal equivalent of fraud, as, for instance, surprise, accident, and mistake, so long as these have reference to facts, as distinguished from mistakes and surprise touching the law, or in the application of the law to a state of facts already actually presented and considered. It is laid down broadly that the jurisdiction and power of a court of equity to relieve against fraud and the legal equivalent thereof as respects judgments and decrees is as ample as it is to set aside a contract or other engagement procured or brought about by like means or under the operation of equivalent circumstances—the dominant requirements being (1) that the facts constituting the fraud, accident, mistake, or surprise must have been the controlling factors in the effectuation of the original decree, without which the decree would not have been made as it was made; (2) the facts justifying the relief must be clearly and positively

alleged as facts, and must be clearly and convincingly proved; (3) the facts must not have been known to the injured party at the time of the original decree; and (4) the ignorance thereof at the time must not have been the result of the want of reasonable care and diligence, in which respect such an application partakes very distinctly of the elements required to be shown under a bill of review for newly-discovered evidence."

In *Tatum* v. *Tate et al.,* 77 Miss. 684, 27 So. 647, and 14 Enc. Pl. & Pr. at page 37 et seq., it is stated in the second syllabus of the Mississippi Report:

"To obtain in equity a new trial at law, a full statement of the facts constituting the new evidence must be made, and the court must be satisfied that the newly-discovered facts are material, would have changed the result, and were not discoverable by the exercise of diligence before the trial at law."

At page 687 (27 So. 648) in the opinion Judge CALHOON said:

"There is no doubt of the power of chancery to decree new trials after the adjournment of the law court, on evidence discovered after trial. But it is of the gravest public interest that trials should be final, and judgments should never be disturbed, except upon clear, convincing, and weighty reasons. So, before the equity tribunal will intervene, the new evidence must be set out by a full statement of facts—not merely the conclusion of witnesses from what they have in mind. This is necessary in order that the court may determine that the facts are material, and that they were not discoverable at the trial by the exercise of proper diligence, and that they would have changed the result. In addition to this, the court should have the affidavit of the witness to the facts in detail, if the affidavit can be had, in support of the affidavit of the complainant."

Conceding for the purposes of this decision that the resignation of Fraley was valid, and that the appellant was validly appointed trustee and executor in his stead

144 Miss.—13.

in conformity to the will, and that she acted in good faith in the administration of the estate and in executing the trust, still this bill cannot be maintained to set aside the settlement made by her in the former suit filed against her, because, if she did not know the facts when she executed that agreement, it was manifestly the grossest kind of negligence on her part not to learn of them. The records were easily accessible, and there was ample time, with any kind of diligence, to have discovered all the facts before the settlement was made.

Family settlements are highly favored in law, and when they are made the court will not lightly set them aside at the instance of the parties thereto. *Powell* v. *Plant* (Miss.), 23 So. 399. The judgment of the court below will accordingly be affirmed.

*Affirmed and remanded.*